**19 MISC 468**

**JUDGE FAILLA**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
SECURITIES AND EXCHANGE COMMISSION,   :
　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　Applicant,　　　　:　　19-MISC-_____
　　- against -　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　:　　ECF CASE
JAMES DAVID O'BRIEN,　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　Respondent.　　　　:
-----------------------------------------------------------x

# MEMORANDUM OF LAW IN SUPPORT OF
# SECURITIES AND EXCHANGE COMMISSION'S
# APPLICATION FOR AN ORDER TO SHOW CAUSE AND
# FOR AN ORDER REQUIRING COMPLIANCE WITH SUBPOENA

Bennett Ellenbogen (ellenbogenb@sec.gov)
Paul G. Gizzi (gizzip@sec.gov)
Securities and Exchange Commission
New York Regional Office
200 Vesey Street, Suite 400
New York, NY 10281-1022
(212) 336-1100

Attorneys for Applicant

October 18, 2019

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS .......................................................................................................... 2

    I.   Background: O'Brien ....................................................................................................... 2

    II.  The Commission's Investigation .................................................................................... 2

        A.  The Nature of the Investigation ................................................................................ 2

        B.  The First Investigative Subpoena to O'Brien and His Proffer.................................. 3

        C.  The Continued Investigation and the Second Testimony Subpoena ........................ 5

        D.  O'Brien's Refusal to Appear for Testimony ............................................................ 6

ARGUMENT ................................................................................................................................ 9

CONCLUSION ........................................................................................................................... 14

## TABLE OF AUTHORITIES

**Cases**

*Endicott Johnson Corp. v. Perkins*, 317 U.S. 501 (1943) ................................................................ 11, 12

*FTC v. Texaco, Inc.*, 555 F.2d 862 (D.C. Cir. 1977) ............................................................................. 11

*In re McVane*, 44 F.3d 1127 (2d Cir. 1995) ............................................................................. 10, 11, 12

*Perez v. LaserShip, Inc.*, No. 15-MISC-31, 2015 WL 11109330 (S.D.N.Y. Sept. 18, 2015) ........ 13

*RNR Enters., Inc. v. SEC*, 122 F.3d 93 (2d Cir. 1997) ..................................................... 10, 11, 12, 13

*SEC v. Arthur Young & Co.*, 584 F.2d 1018 (D.C. Cir. 1978) ............................................................ 11, 12

*SEC v. Finazzo*, 543 F. Supp. 2d 224 (S.D.N.Y. 2008),
  *aff'd*, 360 F. App'x 169 (2d Cir. 2009) ................................................................................................ 14

*SEC v. Finazzo*, 360 F. App'x 169 (2d Cir. 2009) ................................................................................. 11

*SEC v. Knopfler*, 658 F.2d 25 (2d Cir. 1981) ........................................................................................ 13

*SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735 (1984). ............................................................................... 9

*United States v. Construction Products Research, Inc.*, 73 F.3d 464 (2d Cir. 1996) .................... 11

*United States v. LaSalle Nat'l Bank*, 437 U.S. 298 (1978)) ................................................................ 13

*United States v. Morton Salt Co.*, 338 U.S. 632 (1950) ...................................................................... 10

*United States v. Powell*, 379 U.S. 48 (1964) .................................................................................. 11, 13

*United States v. Thriftyman, Inc.*, 704 F.2d 1240 (Temp. Emer. Ct. App. 1983) .......................... 12

**Statutes and Rules**

Section 19 of the Securities Act of 1933 .............................................................................................. 3, 9

Section 20 of the Securities Act of 1933 ................................................................................................. 3

Section 22 of the Securities Act of 1933 ............................................................................................... 10

Section 9 of the Securities Exchange Act of 1934 .............................................................................. 12

Section 21 of the Securities Exchange Act of 1934................................................................3, 9, 10

17 C.F.R. § 201.150(c)(3)............................................................................................................13

17 C.F.R. § 201.232(c).................................................................................................................13

17 C.F.R. § 203.7(a).......................................................................................................................3

17 C.F.R. § 203.8.........................................................................................................................13

Applicant Securities and Exchange Commission ("Commission") respectfully submits this memorandum of law in support of its Application for an Order to Show Cause and for an Order Requiring Compliance with Subpoena ("Application"). For the reasons set forth below, and in the accompanying Declaration of Bennett Ellenbogen ("Ellenbogen Decl.") and the exhibits thereto, the Commission respectfully requests that the Court: (i) order Respondent James David O'Brien ("O'Brien") to show cause why he should not be ordered to comply with the Commission's investigative testimony subpoena; and (ii) ultimately order O'Brien to comply with the subpoena.

## PRELIMINARY STATEMENT

Respondent O'Brien has refused to comply with the Commission's investigative testimony subpoena in an investigation into potential market manipulation. The Commission staff has reason to believe that O'Brien controlled brokerage accounts in which coordinated, manipulative trading of securities may have occurred.

In May 2018, the Commission initially served a testimony subpoena on O'Brien. When O'Brien instead agreed to answer questions voluntarily pursuant to a proffer agreement, the Commission staff allowed him to do so while reserving its right to seek sworn investigative testimony from him in the future. Earlier this year, after the Commission's investigation had progressed and the Commission staff had additional questions for O'Brien, the Commission served a second testimony subpoena on him. Through his counsel, O'Brien refused to appear for testimony pursuant to the subpoena.

O'Brien apparently contends that, because he voluntarily answered questions in the proffer session earlier in the investigation, the Commission later served its testimony subpoena in "bad faith." While O'Brien may have hoped that his voluntary proffer would forestall the need

for sworn investigative testimony, the Commission's continuing investigation now requires additional information from O'Brien. The Commission's statutory authority to investigate potential securities law violations permits it to obtain testimony from O'Brien under oath as necessary to conduct its investigation. The Commission satisfies the four *prima facie* requirements necessary to obtain enforcement of its testimony subpoena, as described in detail below. The Court should therefore order O'Brien to show cause why he should not be ordered to comply with the Commission's subpoena and ultimately enforce the subpoena.

## STATEMENT OF FACTS

### I. Background: O'Brien

O'Brien, who resides in Gibbsboro, New Jersey, previously worked at a number of firms in the securities industry. (Ellenbogen Decl. ¶ 5.) Most recently, from 2006 through 2013, he worked at Janney Montgomery Scott LLC, a broker-dealer registered with the Commission, as a registered representative. (*Id.*) In that capacity, he held various securities licenses. (*Id.*) Since then, O'Brien does not appear to have been associated with any entity registered with the Commission. (*Id.*)

### II. The Commission's Investigation

#### A. The Nature of the Investigation

On February 17, 2017, the Commission issued an Order Directing Private Investigation and Designating Officers to Take Testimony (the "Formal Order") in the Commission's non-public investigation entitled *In the Matter of American River Bankshares (TISO)* (Internal File No. NY-9615) (the "American River Investigation"). (Ellenbogen Decl. ¶ 7.) That order, along with two supplemental orders respectively dated May 14 and June 6, 2019 (the "Supplemental Orders"), designates certain individuals—including individuals who work in the Commission's

2

New York Regional Office in Manhattan—as officers of the Commission empowered to issue subpoenas and take evidence in the American River Investigation. (*Id.*) As these orders make clear, the Commission's statutory authority to conduct the American River Investigation arises under Sections 19(c) and 20(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77s(c) and 77t(a), and Sections 21(a) and (b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78u(a) and (b).[1] (*Id.*)

The American River Investigation concerns, among other things, potential market manipulation in the securities of American River Bankshares and other issuers. (Ellenbogen Decl. ¶ 6.) The Commission staff has identified apparently coordinated trades in the same securities between multiple accounts at separate broker-dealers. (*Id.*) The Commission staff has further identified documents showing that O'Brien owned or controlled all of these accounts. (*Id.*)

### B. The First Investigative Subpoena to O'Brien and His Proffer

On May 8, 2018, pursuant to the Formal Order, the Commission staff issued an investigative subpoena to O'Brien for documents and testimony. (Ellenbogen Decl. ¶ 8 & Ex. 1.) After issuing the subpoena, the Commission staff learned that O'Brien intended to answer questions at a proffer session at the offices of the U.S. Attorney for the District of New Jersey ("USAO") pursuant to a proffer agreement with the USAO. (Ellenbogen Decl. ¶ 9.) At that point in the investigation, the Commission staff determined it would be appropriate to pursue a

---

[1] Commission formal orders are not public, although O'Brien may, upon request, be shown and/or receive a copy of the Formal Order pursuant to Rule 7(a) of the Commission's Rules Relating to Investigations, 17 C.F.R. § 203.7(a). The Commission has not included a copy of the Formal Order with this Application and respectfully requests that the Court conduct an *in camera* review if the Court wishes to examine the Formal Order.

3

proffer with O'Brien under the terms of the Commission staff's standard proffer agreement (the "SEC Proffer Agreement"). (*Id.*) To avoid wasting O'Brien's time and resources, the Commission staff conducted a simultaneous proffer with the USAO. (*Id.*)

On June 7, 2018, the Commission staff told O'Brien's counsel by email that the staff planned to attend the proffer at the USAO's offices and was prepared to enter into the SEC Proffer Agreement with O'Brien with respect to the proffer. (Ellenbogen Decl. ¶ 10 & Ex. 2.) The Commission staff further informed O'Brien's counsel by email that "[i]f the proffer is going forward, we likely would be willing to push off the date of testimony, but we would like to revisit that once we have confirmed the proffer." (*Id.*)

The Commission staff, USAO, and O'Brien ultimately scheduled the proffer for August 21, 2018. (Ellenbogen Decl. ¶ 11.) Shortly before the proffer, O'Brien, his counsel, and the Commission staff signed the SEC Proffer Agreement. (*Id.* & Ex. 3.) The SEC Proffer Agreement provides that, except in limited circumstances, the Commission cannot use the witness's statements against him in any subsequent Commission enforcement proceeding against him. (*Id.*) In addition, the SEC Proffer Agreement applies only to the specific interview identified in the agreement. (*Id.*)

> Among other things, the SEC Proffer Agreement states:
>
> This Agreement contains the terms of the August 21, 2018 meeting between you and the staff of the Division of Enforcement of the United States Securities and Exchange Commission in the above-referenced matter ("Meeting"). . . .
>
> This Meeting is voluntary, and you agree to provide complete and truthful statements during the Meeting. . . .
>
> This Agreement only covers statements provided by you during the Meeting. It does not cover statements provided, including statements made, at any other time, regardless of format (e.g., oral, written, or recorded). . . .

4

> The Commission's staff will not use any statements provided by you
> during the Meeting, except for the following purposes. . . .
>
> You and your counsel agree that you have fully discussed and understand
> all terms of this Agreement and their consequences. . . .
>
> You agree that there are no other promises or understandings applicable to
> the Meeting, and that none will be entered into unless in writing and
> signed by the parties to this Agreement. . . .

(*Id.*)

On August 21, 2018, O'Brien, with his counsel present, answered the staff's and the USAO's questions at the scheduled proffer session, pursuant to the terms set forth in the SEC Proffer Agreement (and the USAO's separate but similar proffer agreement). (Ellenbogen Decl. ¶ 12.)

### C.   The Continued Investigation and the Second Testimony Subpoena

Following the August 2018 proffer, the Commission staff continued its American River Investigation. (Ellenbogen Decl. ¶ 13.) Among other things, the Commission staff conducted additional review of previously produced records, sent out requests to several regulated entities seeking additional records concerning O'Brien's trades, and received and reviewed responsive records. (*Id.*) By May 2019, it became clear to the Commission staff that additional information from O'Brien would assist the staff in completing its investigation. (Ellenbogen Decl. ¶ 14.) The Commission staff decided to ask O'Brien several categories of questions that were not asked or explored in sufficient detail during the August 2018 proffer session. (*Id.*) Among other things, the staff planned to ask O'Brien about his knowledge of the markets from his prior industry employment, his responses to warnings from several brokerage firms that he might be engaging in manipulative trading, the brokerage firms' later closure of his accounts, his subsequent opening of new accounts at different brokerage firms, and the basis for his trading.

5

(Ellenbogen Decl. ¶ 20.)

In mid-May 2019, the Commission staff contacted O'Brien's counsel to inform him that the staff planned to issue a subpoena for O'Brien's testimony. (Ellenbogen Decl. ¶ 15.) The staff inquired whether O'Brien's counsel would be willing to accept service of the subpoena on O'Brien's behalf. (*Id.*) On May 15, 2019, O'Brien's counsel emailed the Commission staff and confirmed that he would accept service of the subpoena. (Ellenbogen Decl. ¶ 16 & Ex. 4.)

Later the same day, the Commission staff issued an investigative subpoena for testimony to O'Brien (the "2019 Subpoena") pursuant to the Formal Order and served the 2019 Subpoena on O'Brien by sending it to his counsel via United Parcel Service overnight delivery and email. (Ellenbogen Decl. ¶ 17 & Ex. 5.) The 2019 Subpoena required O'Brien to provide sworn testimony at the Commission's New York Regional Office at 10:00 a.m. on June 19, 2019. (*Id.*)

About a week later, O'Brien's counsel acknowledged receipt of the 2019 Subpoena and informed the Commission staff that he was unavailable on June 19. (Ellenbogen Decl. ¶ 18 & Ex. 6.) The Commission staff and O'Brien's counsel mutually agreed to reschedule O'Brien's testimony for July 23, 2019. (Ellenbogen Decl. ¶ 19 & Ex. 7.)

### D. O'Brien's Refusal to Appear for Testimony

On July 10, 2019, O'Brien's counsel wrote to the Commission staff to request an agreement that "the oral testimony [O'Brien] may provide pursuant to the most recently issued Subpoena (May 15, 2019) ... (1) is for the purpose of having a record of the oral testimony previously provided pursuant to the attached Proffer and the Subpoena that preceded that Proffer; and (2) that we each continue under the terms of that Proffer." (Ellenbogen Decl. ¶ 21 & Ex. 8.)

On July 15, 2019, the Commission staff responded. (Ellenbogen Decl. ¶ 22 & Ex. 9.) The staff made clear that it would not agree to have O'Brien's testimony be covered by the SEC

6

Proffer Agreement from the prior year and that the 2019 Subpoena sought O'Brien's sworn testimony under oath:

> Mr. O'Brien's statements made during the August 21, 2018 proffer were covered by the terms of the July 12, 2018 proffer agreement; and, as described therein, the agreement only covers statements made by Mr. O'Brien during his proffer. I refer you to the proffer agreement for its full terms and conditions.

(*Id.*)[2]

Two days later, on July 17, 2019, O'Brien's counsel informed the staff: "My client is not yet ready to assert any 5th Amendment 'right' or otherwise refuse to provide further oral testimony." (Ellenbogen Decl. ¶ 23 & Ex. 10.) O'Brien's counsel further indicated that his client "would like an understanding of this procedural process and why it is that you issued another Subpoena in the same matter for which we provided production and oral testimony pursuant to the terms of a Proffer Agreement nearly a year ago?" (*Id.*)

That same day, the Commission staff replied by email and explained that it had properly issued the 2019 Subpoena for O'Brien's testimony. (Ellenbogen Decl. ¶ 24 & Ex. 11.) The Commission staff further explained that it had never agreed that, by accepting O'Brien's proffer, it would not later seek sworn investigative testimony. (*Id.*)

On July 19, 2019, the Commission staff spoke with O'Brien's counsel to further discuss the 2019 Subpoena. (Ellenbogen Decl. ¶ 25.) The Commission staff reiterated its position as to why the 2019 Subpoena for testimony was lawful and proper. (*Id.*)

In response, O'Brien's counsel stated that his client would not appear for the scheduled testimony. (Ellenbogen Decl. ¶ 26.) O'Brien's counsel essentially contended that the 2019

---

[2] In the same email, the Commission staff made clear that O'Brien had the Constitutional right to assert his Fifth Amendment privilege against self-incrimination on the appointed date if he chose. (Ellenbogen Decl. Ex. 9.)

7

Subpoena was not enforceable because the staff had acted in "bad faith" by agreeing to proceed with and attending the August 2018 proffer session but refusing to continue interviewing O'Brien pursuant to a proffer agreement. (*Id.*) O'Brien's counsel appeared to assert that the Commission staff cannot now compel his client to appear for testimony because the staff had previously agreed to proceed with a proffer in August 2018. (*Id.*) The Commission staff explained the differences between a proffer subject to a proffer agreement and investigative testimony subject to Commission investigative subpoenas. (*Id.*) The Commission staff further explained that there is well-established case law that the Commission has the authority to compel O'Brien to appear for testimony in an investigation pursuant to the formal order and may seek judicial enforcement of the 2019 Subpoena through a subpoena enforcement action. (*Id.*) The Commission staff also informed counsel that a subpoenaed witness may, if appropriate, assert his Fifth Amendment privilege against self-incrimination in response to questions in testimony. (*Id.*)

In an effort to avoid the need to seek judicial enforcement of the 2019 Subpoena, on July 22, 2019, after conferring with O'Brien's counsel and to try to avoid the need for judicial intervention, the Commission staff wrote to O'Brien's counsel "to more formally address" his arguments. (Ellenbogen Decl. ¶ 27 & Ex. 12.) The Commission staff's letter explained its position that the prior SEC Proffer Agreement had no bearing on the requirement that O'Brien comply with the 2019 Subpoena and appear before the staff to provide sworn testimony. (*Id.*) Among other things, the letter described case law supporting the Commission's argument and offered to reschedule O'Brien's testimony to a date the following week if he agreed to appear pursuant to the 2019 Subpoena. (*Id.*)

Later on July 22, O'Brien's counsel responded and contended:

> [T]he issuance of the Subpoena without the continued Proffer is in bad faith…. If, and when we are facing a Magistrate Judge, I will again state

8

> my client's position on his behalf and we can further refute your cited cases and other authorities, none of which apply. We remain willing to continue under the terms of the Proffer.

(Ellenbogen Decl. ¶ 28 & Ex. 13.) Later yet that day, the Commission staff responded to O'Brien's counsel and stated, among other things: "Our position remains that there is a validly issued subpoena for Mr. O'Brien's testimony for tomorrow. We will be here with the court reporter at 10 am. We are not willing to proceed by a proffer at this point in our investigation." (Ellenbogen Decl. ¶ 29 & Ex. 14.)

On July 23, 2019, the Commission staff attended O'Brien's scheduled testimony with a court reporter present. (Ellenbogen Decl. ¶ 30.) O'Brien failed to appear. (*Id.*) The Commission staff therefore noted on the record O'Brien's failure to appear and briefly summarized the events leading to O'Brien's failure to appear. (*Id.* & Ex. 15.)

## ARGUMENT

The Commission properly served the 2019 Subpoena on O'Brien for sworn investigative testimony concerning his potentially manipulative securities trades. The Commission satisfies each of the four *prima facie* requirements for enforcement of the 2019 Subpoena. The Court should therefore order O'Brien to show cause why he should not be ordered to comply with the 2019 Subpoena for testimony and ultimately order O'Brien to comply with the 2019 Subpoena.

The Commission has "broad authority to conduct investigations into possible violations of the federal securities laws and to demand production of evidence relevant to such investigations." *SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 741 (1984). Securities Act Section 19(c) and Exchange Act Section 21(b) grant the Commission broad authority to subpoena witnesses to testify under oath in investigations. 15 U.S.C. § 77s(c) ("For purposes of all investigation which, in the opinion of the Commission, are necessary and proper…any officer or officers designated by [the Commission] are empowered to administer oaths and affirmations,

9

subpoena witnesses [and] take evidence."); 15 U.S.C. § 78u(b) ("For the purpose of any such investigation…any officer designated by [the Commission] is empowered to administer oaths and affirmations, subpoena witnesses, compel their attendance [and] take evidence.").

Both Acts further grant the Commission broad authority to seek judicial enforcement of an investigative subpoena for testimony if a witness refuses to appear pursuant to such a subpoena. Specifically, Section 21(c) of the Exchange Act provides:

> In case of contumacy by, or refusal to obey a subpoena issued to, any person, the Commission may invoke the aid of any court of the United States within the jurisdiction of which such investigation or proceeding is carried on . . . in requiring the attendance and testimony of witnesses . . . . And such court may issue an order requiring such person to appear before the. . . officer designated by the Commission . . . to give testimony touching the matter under investigation or in question; and any failure to obey such order of the court may be punished by such court as a contempt thereof.

15 U.S.C. § 78u(c); *see also* 15 U.S.C § 77v(b).[3]

"The courts' role in a proceeding to enforce an administrative subpoena is extremely limited." *RNR Enters., Inc. v. SEC*, 122 F.3d 93, 96–97 (2d Cir. 1997) (quoting *In re McVane*, 44 F.3d 1127, 1135 (2d Cir. 1995)) (affirming order directing compliance with Commission investigative subpoenas). Courts should enforce investigative subpoenas if the information sought is "within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant." *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950).

To obtain an order enforcing the 2019 Subpoena, the Commission need therefore satisfy only four requirements: "[1] that the investigation will be conducted pursuant to a legitimate

---

[3] Venue properly lies in the Southern District of New York under Section 21(c) of the Exchange Act because this District is the jurisdiction in which the investigation "is carried on." (Ellenbogen Decl. ¶¶ 1-3, 7.)

10

purpose, [2] that the inquiry may be relevant to the purpose, [3] that the information sought is not already within the [Commission's] possession, and [4] that the administrative steps required...have been followed." *RNR Enters.*, 122 F.3d at 96–97 (quoting *United States v. Powell*, 379 U.S. 48, 57–58 (1964)); *see also SEC v. Finazzo*, 360 F. App'x 169, 170 (2d Cir. 2009) (affirming order granting Commission application to enforce investigative subpoena); *SEC v. Arthur Young & Co.*, 584 F.2d 1018, 1021, 1024 (D.C. Cir. 1978) (affirming the enforcement of Commission subpoenas). "An affidavit from a governmental official is sufficient to establish a *prima facie* showing that these requirements have been met." *RNR Enters.*, 122 F.3d at 97 (quoting *McVane*, 44 F.3d at 1136). The Commission satisfies each of the four *prima facie* requirements for the 2019 Subpoena's enforcement.[4]

*First*, the Commission's American River Investigation serves a legitimate purpose: to determine whether O'Brien (and/or others) have violated the federal securities laws by conducting coordinated, manipulative securities trades between multiple accounts at separate broker-dealers, among other things. (Ellenbogen Decl. ¶ 6.) The investigation therefore serves a "legitimate investigatory purpose." *RNR Enters.*, 122 F.3d at 97.

*Second*, the Commission seeks testimony relevant to the American River Investigation. To satisfy this requirement, the Commission need only show that the information sought is "not

---

[4] Once the Commission has made a *prima facie* showing, O'Brien can defeat the enforcement of the 2019 Subpoena only by demonstrating that it is "unreasonabl[e]," it is "issued in bad faith or for an 'improper purpose,'" or "compliance would be '*unnecessarily* burdensome.'" O'Brien cannot contest the 2019 Subpoena by contending that he did not violate the federal securities laws. *See, e.g., Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 509 (1943); *United States v. Construction Products Research, Inc.*, 73 F.3d 464, 470 (2d Cir. 1996); *see also FTC v. Texaco, Inc.*, 555 F.2d 862, 879 (D.C. Cir. 1977) ("If parties under investigation could contest substantive issues in an enforcement proceeding, when the agency lacks the information to establish its case, administrative investigations would be foreclosed or at least substantially delayed.").

plainly incompetent or irrelevant to any lawful purpose." *Arthur Young & Co.*, 584 F.2d at 1029 (quoting *Endicott Johnson Corp.*, 317 U.S. at 509). Courts "defer to the agency's appraisal of relevancy, which must be accepted so long as it is not obviously wrong." *RNR Enters.*, 122 F.3d at 97 (quoting *McVane*, 44 F.3d at 1135). The 2019 Subpoena seeks testimony from O'Brien, who appears to have conducted all the trades in question and reaped all the benefits of the trades. Among other things, the Commission seeks to probe O'Brien's reasons for his trading, including to determine whether O'Brien traded with manipulative intent (Ellenbogen Decl. ¶¶ 14, 20), an element of certain potential securities law violations.[5] O'Brien's testimony is therefore highly relevant to the Commission's investigation.

*Third*, the Commission does not already have the information it seeks from O'Brien. O'Brien has refused to appear to provide sworn testimony. Particularly now that its investigation has developed further, the Commission staff has numerous questions for O'Brien that were not asked, or were not asked in sufficient detail, during the August 2018 proffer. (*Id.*) The August 2018 proffer therefore provides O'Brien with no valid reason for refusing to comply with the 2019 Subpoena and appear for sworn testimony. *Cf. United States v. Thriftyman, Inc.*, 704 F.2d 1240, 1242, 1245 (Temp. Emer. Ct. App. 1983) ("[W]e conclude that appellants did not show that the information sought by the administrative subpoenas was so 'unnecessarily duplicative' that it constituted abuse, improper purpose or bad faith.") (where subpoena recipient had originally provided the Department of Energy with inspection access to the relevant documents but later refused to comply with the agency's subpoena seeking production of the documents); *Perez v. LaserShip, Inc.*, No. 15-MISC-31, 2015 WL 11109330, at *4 (S.D.N.Y. Sept. 18, 2015)

---

[5] For example, Exchange Act Section 9(a)(2) prohibits securities trades made with specific intent. 15 U.S.C. § 78i(a)(2).

(rejecting respondent's argument that a Department of Labor document subpoena was issued for an improper purpose because the agency had already received certain documents related to the investigation).[6]

*Fourth*, the Commission both issued and served the 2019 Subpoena in accordance with "the administrative steps required." *RNR Enters.*, 122 F.3d at 96–97 (quoting *Powell*, 379 U.S. at 57–58). The Commission issued the 2019 Subpoena properly: the Formal Order designated the Commission lawyer who issued the 2019 Subpoena as an officer of the Commission authorized to do so. The Commission then properly served the 2019 Subpoena on O'Brien. The Commission's Rules of Practice govern the procedures for Commission proceedings. Rule 232(c) of the Commission's Rules of Practice provides that service of Commission investigative subpoenas must be made pursuant to the provisions of Rule 150(b) through (d) of the same rules. 17 C.F.R. § 201.232(c); *see also* 17 C.F.R. § 203.8 ("Service of subpoenas issued in formal investigative proceedings shall be effected in the manner prescribed by Rule 232(c) of the Commission's Rules of Practice."). Rule 150(c)(3) in turn permits service of Commission investigative subpoenas by "sending the papers through a commercial courier service or express delivery service." 17 C.F.R. § 201.150(c)(3). The Commission served the 2019 Subpoena in accordance with these rules by first obtaining authorization from O'Brien's counsel to serve the 2019 Subpoena on counsel on behalf of his client and by then serving the 2019 Subpoena by United Parcel Service overnight delivery on O'Brien's counsel. (Ellenbogen Decl. ¶¶ 15-17 & Ex. 4-5.) Indeed, O'Brien's counsel then acknowledged his acceptance of the 2019 Subpoena on

---

[6] To the extent O'Brien contends that the Commission has acted in "bad faith" by serving him with a testimony subpoena after he provided information at the August 2018 proffer, O'Brien bears a heavy burden he cannot meet. He "must prove that the improper purpose is that of the Commission, not merely that of one of its investigators." *SEC v. Knopfler*, 658 F.2d 25, 26 (2d Cir. 1981) (citing *United States v. LaSalle Nat'l Bank*, 437 U.S. 298, 316 (1978)).

behalf of his client. (Ellenbogen Decl. ¶ 18 & Ex. 6.)

Accordingly, "the Commission has made a *prima facie* showing that the subpoena[] should be enforced." *SEC v. Finazzo*, 543 F. Supp. 2d 224, 227 (S.D.N.Y. 2008), *aff'd*, 360 F. App'x 169 (2d Cir. 2009). The Court should order O'Brien to show cause why he should not be ordered to comply with the 2019 Subpoena and should ultimately order O'Brien to comply with the 2019 Subpoena and appear for testimony before the Commission staff.

## CONCLUSION

For the foregoing reasons, the Commission respectfully requests that the Court: (i) order O'Brien to show cause why he should not be ordered to comply with the 2019 Subpoena; and (ii) order O'Brien to comply with the 2019 Subpoena.

Dated: October 18, 2019
New York, NY

SECURITIES AND EXCHANGE COMMISSION

By: /s/ Paul G. Gizzi
Bennett Ellenbogen (ellenbogenb@sec.gov)
Paul G. Gizzi (gizzip@sec.gov)
Securities and Exchange Commission
New York Regional Office
200 Vesey Street, Suite 400
New York, NY 10281-1022
(212) 336-1100

Attorneys for Applicant

14