19MISC 468

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
SECURITIES AND EXCHANGE COMMISSION,  :
                                                                        :          JUDGE FAILLA
                                    Applicant,           :
                                                                        :          19-MISC-_____
        - against -                                              :
                                                                        :          ECF CASE
JAMES DAVID O'BRIEN,                            :
                                                                        :
                                    Respondent.      :
------------------------------------------------------------x

## DECLARATION OF BENNETT ELLENBOGEN

I, Bennett Ellenbogen, pursuant to 28 U.S.C. § 1746, do hereby declare as follows:

1.      I am employed as an attorney in the Division of Enforcement in the New York Regional Office of Applicant Securities and Exchange Commission (the "Commission"). I am a member of the bar of this Court.

2.      I submit this Declaration in support of the Commission's Application for an Order to Show Cause and for an Order Requiring Compliance with Subpoena directing Respondent James David O'Brien ("O'Brien") to comply with the investigative subpoena, dated May 15, 2019, served on him through his counsel in the Commission's non-public investigation entitled *In the Matter of American River Bankshares (TISO)* (Internal File No. NY-9615) (the "American River Investigation").

3.      I have been involved in the Commission's American River Investigation as the primary staff attorney working on the investigation since December 12, 2016, during which time I have reviewed, among other documents, O'Brien's trading data, correspondence between O'Brien and his brokerage firms and other materials obtained from the brokerage firms. I make this Declaration based on personal knowledge, including my own review of documents and conversations with other members of the Commission's staff.

4.     Because the Commission submits this declaration for the limited purpose of submitting its instant application, I have not set forth each and every detail concerning the Commission's non-public American River Investigation.

### The Commission's Investigation

5.     Based on publicly-available records from the Financial Industry Regulatory Authority, or FINRA, O'Brien, a resident of Gibbsboro, New Jersey, was previously employed at a number of firms in the securities industry. Most recently, from 2006 through 2013, he worked at Janney Montgomery Scott LLC, a broker-dealer registered with the Commission, as a registered representative. In that capacity, he held various securities licenses. Since then, O'Brien does not appear to have been associated with any entity registered with the Commission.

6.     The American River Investigation concerns, among other things, potential market manipulation in the securities of American River Bankshares and other issuers. As part of the American River Investigation, Commission staff has identified apparently coordinated trades in the same securities between multiple accounts at separate broker-dealers. The Commission staff has further identified documents showing that O'Brien owned or controlled all of these accounts.

7.     On February 17, 2017, the Commission issued an Order Directing Private Investigation and Designating Officers to Take Testimony (the "Formal Order") in the American River Investigation. That order, along with two supplemental orders respectively dated May 14, 2019 and June 6, 2019 (the "Supplemental Orders"), designates certain individuals—including me and others who work in the Commission's New York Regional Office in Manhattan—as officers of the Commission empowered to issue subpoenas and take evidence in the American River Investigation. As these orders make clear, the Commission's statutory authority to conduct the American River Investigation arises under Sections 19(c) and 20(a) of the Securities

Act of 1933, 15 U.S.C. §§ 77s(c) and 77t(a), and Sections 21(a) and (b) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78u(a) and (b).[1]

### The First Investigative Subpoena to O'Brien and His Proffer

8.      On May 8, 2018, I issued a Commission investigative subpoena to O'Brien pursuant to the Formal Order. A true and correct copy of the May 8, 2018 subpoena is attached as Exhibit 1.

9.      After issuing the subpoena, the Commission staff learned that O'Brien intended to answer questions at a proffer session at the offices of the U.S. Attorney for the District of New Jersey ("USAO") pursuant to a proffer agreement with the USAO. At that point in the investigation, the Commission staff determined it would be appropriate to pursue a proffer with O'Brien under the terms of the Commission staff's standard proffer agreement (the "SEC Proffer Agreement"). To avoid wasting O'Brien's time and resources, the Commission staff conducted a simultaneous proffer with the USAO.

10.     Therefore, on June 7, 2018, I told O'Brien's counsel in an email that the Commission staff planned to attend the proffer at the USAO's offices, and that Commission staff was prepared to enter into the SEC Proffer Agreement with O'Brien with respect to the proffer. I further informed O'Brien's counsel that, among other things, "[i]f the proffer is going forward, we likely would be willing to push off the date of testimony, but we would like to revisit that once we have confirmed the proffer." A true and correct copy of the June 7, 2018 email is attached as Exhibit 2.

---

[1]     Commission formal orders are not public, although O'Brien may, upon request, be shown and/or receive a copy of the Formal Order pursuant to Rule 7(a) of the Commission's Rules Relating to Investigations, 17 C.F.R. § 203.7(a). The Commission has not included a copy of the Formal Order with this Application and respectfully requests that the Court conduct an *in camera* review if the Court wishes to examine the Formal Order.

3

11. The date for the proffer was ultimately scheduled for August 21, 2018. Shortly before the proffer, O'Brien and the Commission staff entered into the SEC Proffer Agreement. A true and correct copy of the SEC Proffer Agreement is attached as Exhibit 3.

12. On August 21, 2018, O'Brien, with his counsel present, answered the staff's and the USAO's questions at the scheduled proffer, pursuant to the terms set forth in the SEC Proffer Agreement and the USAO's separate but similar proffer agreement.

**The Continued Investigation and the Second Testimony Subpoena**

13. Following the August 2018 proffer, the Commission staff continued its American River Investigation. Among other things, the Commission staff conducted additional review of previously produced records, sent out requests to several regulated entities seeking additional records concerning O'Brien's trades, and received and reviewed responsive records.

14. By May 2019, it became clear to the Commission staff that additional information from O'Brien would assist the staff in completing its investigation. The Commission staff decided to ask O'Brien several categories of questions that were not asked or explored in sufficient detail during the August 2018 proffer session.

15. In mid-May 2019, the Commission staff contacted O'Brien's counsel to inform him that the staff planned to issue a subpoena for O'Brien's testimony. The staff inquired whether O'Brien's counsel would be willing to accept service of the subpoena on O'Brien's behalf.

16. On May 15, 2019, I received an email from O'Brien's counsel stating that counsel would accept service of the subpoena. A true and correct copy of a May 15, 2019 email from O'Brien's counsel is attached as Exhibit 4.

17. Later the same day, I issued an investigative subpoena for testimony to O'Brien (the "2019 Subpoena") pursuant to the Formal Order and served the 2019 Subpoena on O'Brien by sending it to his counsel via United Parcel Service overnight delivery and email. The 2019 Subpoena required O'Brien to provide sworn testimony at the Commission's New York Regional Office at 10:00 a.m. on June 19, 2019. A true and correct copy of the 2019 Subpoena and proof of service is attached as Exhibit 5.

18. About a week later, O'Brien's counsel acknowledged receipt of the 2019 Subpoena and indicated that counsel was unavailable on June 19, 2019. A true and correct copy of a May 21, 2019 email from O'Brien's counsel is attached as Exhibit 6.

19. The Commission staff and O'Brien's counsel then agreed upon the mutually convenient date of July 23, 2019 for O'Brien's testimony. A true and correct copy of a May 21, 2019 email from O'Brien's counsel is attached as Exhibit 7.

20. During the planned investigative testimony, the Commission staff intended to focus on several categories of questions that were not asked or explored in sufficient detail during the August 2018 simultaneous proffer with the USAO. Among other things, the staff planned to ask O'Brien about his knowledge of the markets from his prior industry employment, his responses to warnings from several brokerage firms that he might be engaging in manipulative trading, the brokerage firms' later closure of his accounts, his subsequent opening of new accounts at different brokerage firms, and the basis for his trading.

## O'Brien's Refusal to Appear for Testimony

21. On July 10, 2019, O'Brien's counsel wrote to the Commission staff to request an agreement that "the oral testimony [O'Brien] may provide pursuant to the most recently issued Subpoena (May 15, 2019) . . . (1) is for the purpose of having a record of the oral testimony

previously provided pursuant to the attached Proffer and the Subpoena that preceded that Proffer; and (2) that we each continue under the terms of that Proffer." A true and correct copy of the July 10, 2019 email is attached as Exhibit 8.

22. On July 15, 2019, I responded. I made clear that the Commission staff would not agree to have O'Brien's testimony be covered by the SEC Proffer Agreement from the prior year and that the 2019 Subpoena sought O'Brien's sworn testimony under oath. A true and correct copy of my July 15, 2019 email is attached as Exhibit 9.

23. Two days later, on July 17, 2019, O'Brien's counsel informed the staff that "My client is not yet ready to assert any 5th Amendment 'right' or otherwise refuse to provide further oral testimony." Further, O'Brien's counsel indicated that O'Brien "would like an understanding of this procedural process and why it is that you issued another Subpoena in the same matter for which we provided production and oral testimony pursuant to the terms of a Proffer Agreement nearly a year ago?" A true and correct copy of a July 17, 2019 email from O'Brien's counsel is attached as Exhibit 10.

24. That same day, I responded to O'Brien's counsel by email. I explained to O'Brien's counsel that the 2019 Subpoena for O'Brien's testimony was properly issued. The Commission staff further explained that it had never agreed that, by accepting O'Brien's proffer, it would not later seek sworn investigative testimony. A true and correct copy of my July 17, 2019 email is attached as Exhibit 11.

25. On July 19, 2019, I, along with another Commission staff member, spoke with O'Brien's counsel by telephone to further discuss the 2019 Subpoena. The Commission staff reiterated its position as to why the subpoena for testimony was lawful and proper.

26. In response, O'Brien's counsel stated that his client would not appear for the scheduled testimony. O'Brien's counsel accused the staff of acting in "bad faith" because Commission staff had attended the proffer on August 21, 2018 but refused to continue interviewing O'Brien pursuant to a proffer agreement. O'Brien's counsel appeared to assert that the Commission staff cannot now compel his client to appear for testimony because the staff had previously agreed to proceed with a proffer in August 2018. The Commission staff explained the differences between a proffer subject to a proffer agreement and investigative testimony subject to Commission investigative subpoenas. The Commission staff further explained that there is well-established case law that the Commission has the authority to compel O'Brien to appear for testimony in an investigation pursuant to the formal order and may seek judicial enforcement of the subpoena through a subpoena enforcement action. The Commission staff also informed counsel that a subpoenaed witness may, if appropriate, assert his Fifth Amendment privilege against self-incrimination in response to questions in testimony.

27. In an effort to avoid the need to seek judicial enforcement of the 2019 Subpoena, on July 22, 2019, the Commission staff sent a letter to O'Brien's counsel "to more formally address your position that Mr. O'Brien is not required to attend" his previously subpoenaed and scheduled testimony. A true and correct copy of the staff's July 22, 2019 letter is attached as Exhibit 12.

28. O'Brien's counsel responded that day and contended:

[T]he issuance of the Subpoena without the continued Proffer is in bad faith.... If, and when we are facing a Magistrate Judge, I will again state my client's position on his behalf and we can further refute your cited cases and other authorities, none of which apply. We remain willing to continue under the terms of the Proffer.

A true and correct copy of the July 22, 2019 email from O'Brien's counsel is attached as Exhibit 13.

29. I responded to O'Brien's counsel later that day and stated, among other things: "Our position remains that there is a validly issued subpoena for Mr. O'Brien's testimony for tomorrow. We will be here with the court reporter at 10 am. We are not willing to proceed by a proffer at this point in our investigation." A true and correct copy of my July 22, 2019 email replying to O'Brien's counsel is attached as Exhibit 14.

30. On July 23, 2019, I, along with another Commission staff member, attended O'Brien's scheduled testimony with a court reporter present. O'Brien failed to appear. The Commission staff therefore noted on the record O'Brien's failure to appear and briefly summarized the events leading to O'Brien's failure to appear. A true and correct copy of the July 23, 2019 testimony transcript (without exhibits) is attached as Exhibit 15.

31. Since that time, O'Brien's counsel has not informed me or, to my knowledge, any other member of the Commission staff, that his client has reconsidered his decision not to appear for testimony pursuant to the 2019 Subpoena.

32. The Commission has not made any other application for similar relief as to O'Brien.

I declare under penalty of perjury that the foregoing is true and correct.

Executed:   October 18, 2019
            New York, NY

_____
Bennett Ellenbogen