UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE
COMMISSION,

       Applicant,

  -v.-

JAMES DAVID O'BRIEN,

       Respondent.

19 Misc. 468 (KPF)

**ORDER**

KATHERINE POLK FAILLA, District Judge:

  The Securities and Exchange Commission (the "Commission") brings this application for an order requiring Respondent James David O'Brien to comply with the Commission's testimony subpoena. The Commission argues that it has the statutory authority to compel O'Brien to testify under oath as a part of the Commission's investigation. O'Brien, for his part, contends that the Commission's subpoena was issued in bad faith and for an improper purpose. For the reasons set forth in the remainder of this Opinion, the Commission's application is granted.

## BACKGROUND[1]

### A. Factual Background

  On May 8, 2018, the Commission issued an investigative subpoena to O'Brien for documents and testimony as part of its investigation into potential

---

[1] The facts set forth in this Opinion are drawn principally from the Memorandum of Law in Support of Securities and Exchange Commission's Application for an Order to Show Cause and for an Order Requiring Compliance with Subpoena ("Comm'n Br." (Dkt. #2)); the exhibits to the Declaration of Bennett Ellenbogen ("Ellenbogen Decl., Ex. [ ]" (Dkt. #3)); and Respondent's Memorandum of Law in Opposition to the Securities and

market manipulation of American River Bankshares securities. (Comm'n Br. 3). Following the issuance of the subpoena, and at least in part because of the existence of a parallel criminal investigation, the Commission entered into a proffer agreement with O'Brien and conducted a joint proffer session with federal prosecutors on August 21, 2018. (*Id.* at 3-5; O'Brien Opp. 1-2). The Commission's proffer agreement provided that its staff would not use any statements provided by O'Brien during the August 21 meeting except, *inter alia*, "[t]o obtain other evidence, which may be used against [O'Brien] and others." (Ellenbogen Decl., Ex. 3). The proffer agreement also stated that there were "no other promises or understandings applicable to the [August 21] Meeting." (*Id.*).

Following the proffer session, the Commission continued its investigation into American River Bankshares, including requesting further documentation from O'Brien. (Comm'n Br. 5; O'Brien Opp. 2). By May 2019, the Commission realized that it wished to question O'Brien once more, and issued a second subpoena to O'Brien for that purpose. (Comm'n Br. 5-6). After several anodyne communications regarding scheduling, O'Brien's counsel asked the Commission if O'Brien's testimony would be covered by the prior proffer agreement, and the Commission responded that the testimony would not be so covered. (*Id.* at 6-7). In response, O'Brien's counsel advised the Commission that his client would not appear for his scheduled testimony, arguing that the

---

Exchange Commission's Application for an Order to Show Cause and an Order Requiring Compliance with Subpoena ("O'Brien Opp." (Dkt. #12)).

Commission had acted in bad faith by engaging in the August 21, 2018 proffer session but then refusing to allow O'Brien to testify in 2019 pursuant to the proffer agreement. (*Id.* at 7-8). On July 23, 2019, O'Brien failed to appear for his scheduled testimony with the Commission. (*Id.* at 9).

**B.    Procedural History**

On October 18, 2019, the Commission filed an application for an order to show cause why O'Brien should not comply with the Commission's subpoena, as well as an application to enforce the subpoena. (Dkt. #1). The Commission also filed a supporting memorandum and declaration at that time. (Dkt. #2-3). On that same day, the Court issued an Order directing O'Brien to show cause why he should not be required to appear for testimony before the Commission and scheduled a hearing before the Court on the question. (Dkt. #5). On November 6, 2019, O'Brien filed briefing in opposition to the Commission's application, along with a supporting declaration (Dkt. #12-13), and on November 18, 2019, the Commission filed a reply (Dkt. #14).

The parties appeared before the Court on November 22, 2019, for a hearing on whether the subpoena should be enforced. (Minute Entry of November 22, 2019). After vigorous oral argument from both sides, the Court requested additional briefing from the Commission. (*Id.*). The Commission provided such supplemental briefing on December 6, 2019 (Dkt. #17), and O'Brien filed a response on December 9, 2019 (Dkt. #18).

**DISCUSSION**

**A. The Court Will Enforce the Commission's Subpoena**

**1. The Relevant Standard**

In order for the Commission to have this Court enforce its subpoena, it "must show [i] that the investigation will be conducted pursuant to a legitimate purpose, [ii] that the inquiry may be relevant to the purpose, [iii] that the information sought is not already within the Commission's possession, and [iv] that the administrative steps required have been followed." *SEC* v. *Finazzo*, 535 F. Supp. 2d 224, 226 (S.D.N.Y. 2008) (internal ellipses omitted) (quoting *RNR Enters., Inc.* v. *SEC*, 122 F.3d 93, 96 (2d Cir. 1997)). O'Brien does not contest any of the latter three prongs of the test; his only argument is that the investigation is being conducted in bad faith. In particular, O'Brien argues that the Commission is acting in bad faith — and indeed, seeks to violate its own proffer agreement — by seeking to compel O'Brien to testify about subject matter that he already discussed within the protective sphere of the August 21 proffer session and its corresponding agreement. (*See* O'Brien Opp. 7-10). Therefore, the only question for the Court to answer is whether the Commission acts in bad faith by seeking to compel testimony about subject matter already discussed under the auspices of a proffer agreement.

**2. The August 21 Proffer Agreement Only Grants O'Brien "Use" Immunity**

A relevant initial question is whether the August 21 proffer agreement provided for "use" immunity or "derivative use" immunity, since that will determine the extent to which the Commission may rely on O'Brien's

4

statements from his 2018 proffer session.  Use immunity precludes the Government from being able to use an interviewee's statements directly against himself in a prosecution, but permits the Government to "use information derived from the statements."  *See United States* v. *Plummer*, 941 F.2d 799, 803 (9th Cir. 1991).  Derivative use immunity, on the other hand, requires the Government "to have derived all the information on which the subsequent prosecution was based from a source wholly independent of the statements made in the interview."  *See id.*  In interpreting proffer agreements such as the one entered into between the Commission and O'Brien, the Court relies on principles of contract law.  *See United States* v. *Liranzo*, 944 F.2d 73, 77 (2d Cir. 1991). "Where the language of a contract is unambiguous, the parties' intent is discerned from the four corners of the contract."  *Id.* (citing *Nicholas Labs. Ltd.* v. *Almay, Inc.*, 900 F.2d 19, 21 (2d Cir. 1990) (per curiam)); *see generally United States* v. *Barrow*, 400 F.3d 109, 117 (2d Cir. 2005).

Here, the August 21 proffer agreement clearly provided only for use immunity.  There is no ambiguity in the language — the agreement states that "any statements made by [O'Brien] during the Meeting" may be used "[t]o obtain other evidence, which may be used against [O'Brien] or others." (Ellenbogen Decl., Ex. 3).  Given the clarity of the agreement's language, it is plain that the parties intended for the proffer agreement to provide use immunity, and nothing more.  Indeed, O'Brien concedes as much in his briefing.  (*See* O'Brien Opp. 15 (noting that the Commission could use the proffer session "as a source of leads to discover additional evidence")).  Thus,

while the plain language of the proffer agreement precludes the Commission from directly weaponizing O'Brien's prior statements against him, it does not prevent the Commission from either using those prior statements to develop new evidence or retreading the ground it explored in the August 21 proffer session.

### 3. There Is No Bad Faith in Repeating Questions from the Proffer Session

O'Brien's bad faith argument, at its core, is that the Commission is trying to have its cake and eat it too. According to O'Brien, the Commission has accepted the benefits of its proffer agreement — open testimony from O'Brien and the production of numerous documents — but does not wish to accept the burden — "that the person offering the proffer has a legitimate expectation that they will not be prosecuted based on the information provided in the proffer session." (*See* O'Brien Opp. 8-9). Put another way, O'Brien's theory is that the Commission has used the proffer session as a fishing expedition, in which the Commission lures the unsuspecting interviewee into divulging incriminating information under a false promise of immunity, only to then compel him to repeat the incriminating information at a later date without the protection of any such immunity.

If this were an accurate representation of the Commission's conduct, the Court might be inclined to agree with O'Brien that this is bad faith behavior. However, the Commission is not guilty of such malicious action. This is made clear by *Pillsbury Co.* v. *Conboy*, 459 U.S. 248 (1983). Although the Supreme Court's holding in *Pillsbury* focuses on whether a deponent's civil deposition

6

testimony, closely tracking or repeating verbatim prior immunized testimony, also qualifies as immunized testimony, *see* 459 U.S. at 263-64, the case is relevant because it makes clear that while the Commission can compel O'Brien to testify, it cannot compel him to answer any specific questions. Because the proffer agreement does not, by its language, apply to questions about previously discussed subject matter, O'Brien is free to assert his Fifth Amendment right against self-incrimination during his testimony before the Commission. *See id.* at 256-57 (finding that the deponent could not be compelled to answer deposition questions closely tracking prior immunized testimony where the deponent has asserted his Fifth Amendment right and there is no "duly authorized assurance of immunity at the time"). And O'Brien is just as protected by his ability to assert his Fifth Amendment right as he would be if he were still covered by the Commission's offer of immunity. *Cf. Kastigar* v. *United States*, 406 U.S. 441, 462 (1972) (holding that "the immunity provided by 18 U.S.C. § 6002" — an immunity comparable to that offered by the Commission — "leaves the witness ... in substantially the same position as if the witness had claimed the Fifth Amendment privilege").

Indeed, were the Court to find otherwise, it would in fact be O'Brien who would unfairly receive all the benefits and none of the burdens of the proffer agreement. O'Brien's interpretation of the law would mean that a prospective defendant, once questioned under a proffer agreement about a particular set of facts, could never be prosecuted or sued on those facts. *See Pillsbury*, 459 U.S. at 260 (noting that if a prior immunity order was interpreted to extend to

7

subsequent testimony closely tracking immunized testimony, it would "in effect invest the deponent with transactional immunity on matters about which he testified at the immunized proceedings"). Such an interpretation would significantly devalue the utility of proffer agreements, as well as stretch the agreement far beyond what the parties originally intended when they contracted. The Court finds that the proffer agreement does not preclude, and thus that there is no bad faith in, the Commission asking O'Brien the same questions as he was previously asked on August 21, 2018, or asking O'Brien about the same subject matter. *Cf. Northern* v. *Stewart*, 32 F. App'x 800, 801-02 (9th Cir. 2002) (unpublished decision) (finding, in a case where Northern sought to question his co-defendant about subject matter that the co-defendant had previously testified about with the benefit of use immunity, that Northern "was free to ask the same questions and cover the same material").

Finally, insofar as O'Brien seeks relief on the grounds that the Commission engages in a widespread practice of issuing bad faith subpoenas subsequent to proffer sessions, O'Brien's argument fails for the reasons already provided above. Assuming the Commission's behavior in this case is representative of its behavior in general regarding proffer arguments, the Court cannot find any fault in the Commission's practices. O'Brien has failed to show any way in which the Commission has acted in bad faith, and thus he must comply with the Commission's subpoena.

## CONCLUSION

For the reasons set forth in this Opinion, the Commission's motion to compel O'Brien's testimony is GRANTED. O'Brien is ORDERED to appear for testimony at the Commission's offices in the New York Regional Office in response to the subpoena at a mutually convenient time on or before **January 31, 2020**. In the event that O'Brien does not appear for his testimony by the date specified above, the Commission will have established a *prima facie* case of civil contempt against O'Brien and O'Brien may be held in civil contempt for failure to comply with this Court's Order without further notice or hearing.

The Clerk of Court is directed to close this matter.

SO ORDERED.

Dated: December 27, 2019
       New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge